UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEANDRE HENRY,

                Petitioner,              Case Number: 2:12-CV-11965
                                      HON. GEORGE CARAM STEEH

v.

STEVE RIVARD,

                Respondent.

_____/

## OPINION AND ORDER (1) DENYING PETITIONER'S MOTION TO DISMISS (ECF 40); (2) DENYING PETITION FOR WRIT OF HABEAS CORPUS (ECF 1); (3) DENYING CERTIFICATE OF APPEALABILITY; AND (4) GRANTING LEAVE TO PROCEED *IN FORMA PAUPERIS ON APPEAL*

Petitioner Deandre Henry, currently in the custody of the Michigan Department of Corrections, filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  He challenges his convictions for assault with intent to murder, Mich. Comp. Laws § 750.83, felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b.  Also before the Court is Petitioner's motion to dismiss.  For the reasons discussed, the Court denies the motion to dismiss, denies the petition and declines to

issue a certificate of appealability.  The Court grants Petitioner leave to

proceed *in forma pauperis* on appeal.

## I.  Background

Petitioner's convictions arise from a 2006 shooting in Detroit.  The

state trial court summarized the evidence supporting Petitioner's conviction

as follows:

> This case arises out of the June 02, 2006, shooting of a Mr.
> Toby Adams on Detroit's west side.  On June 27, 2006, Adams
> testified at the preliminary examination that defendant had
> "flagged" him down, approached his vehicle on the passenger
> side door, and started asking him questions (PE Trans. p.7).
> Adams further said that there was another man named "AD"
> standing on the driver's side of his vehicle talking on a cell
> phone (PE Trans. p.7-8).  Adams then testified that defendant
> produced a hand gun and fired several shots in to the vehicle
> striking Adams (PE Trans. p.8).  On cross-examination, Adams,
> who had known defendant prior to this incident, positively
> identified defendant as the person who shot him (PE Trans.
> p.14).  Sometime prior to trial however, Adams was murdered
> and his preliminary exam testimony was presented to the jury.

*People v. Henry*, No. 06-007508-01, Op. & Order (Wayne County Cir. Ct.

Nov. 2, 2009) (ECF No. 11-15, PageID.1201).

Petitioner and co-defendant Adrian Gibson were tried before the

same jury in Wayne County Circuit Court.  Petitioner was convicted of

assault with intent to murder, being a felon in possession of a firearm, and

possession of a firearm during the commission of a felony.  Co-defendant

Gibson was acquitted of all charges. Petitioner's convictions were affirmed on direct appeal. *People v. Henry*, No. 274096, 2008 WL 108987 (Mich. Ct. App. Jan. 10, 2008); *People v. Henry*, 481 Mich. 878 (Mich. May 27, 2008).

The trial court denied Petitioner's motion for collateral review on November 2, 2009. *People v. Henry*, No. 06-007508-01 (Wayne County Cir. Ct. Nov. 2, 2009). The Michigan Court of Appeals and Michigan Supreme Court denied Petitioner's applications for leave to appeal. *See People v. Henry*, No. 300874 (Mich. Ct. App. Mar. 26, 2012); *People v. Henry*, 491 Mich. 885 (Mich. Mar. 26, 2012).

On May 1, 2012, Petitioner filed a habeas corpus petition in this Court. (ECF No. 1.) Respondent filed an answer in opposition on September 6, 2012. (ECF No. 10.) Petitioner later moved for a stay of the habeas proceeding to allow him to raise an additional unexhausted claim in state court. (ECF No. 13.) The Court granted the motion and administratively closed the case. (ECF No. 14.) On October 20, 2014, Petitioner filed a motion to lift the stay and reinstate his petition. (ECF No. 15.) He also filed an amended petition. (ECF No. 16.) The Court lifted the stay and directed Respondent to file a supplemental responsive pleading.

(ECF No. 18.) Respondent filed an answer in opposition to the amended petition. (ECF No. 19.)

Petitioner requested a second stay in 2016 to allow him to exhaust a claim in state court based upon the Michigan Supreme Court's decision in *People v. Lockridge*, 498 Mich. 358 (2015). (ECF No. 24.) The Court granted the motion and administratively closed the case. (ECF No. 25.) On November 29, 2018, Petitioner moved to lift the stay and filed an amended petition. (ECF No. 26, 28.) The Court granted the motion and directed Respondent to file a response to the amended petition. (ECF No. 31.) A response was filed on January 13, 2020. (ECF No. 32.)

Considering the original, supplemental and second supplemental petitions together, these claims are before the Court:

I. Newly discovered evidence [affidavits of Adrian Gibson, Jeffrey Moore, and Vivenne Jarman] establishes Petitioner's actual innocence.

II. Petitioner was denied the effective assistance of trial counsel for multiple reasons.

III. Petitioner was denied the effective assistance of appellate counsel for failure to raise meritorious issues on appeal, effectively leaving Petitioner without counsel.

IV. Petitioner was constructively denied any counsel at all at his preliminary examination because his court-appointed attorney was appointed the same day as the hearing and had no time to

properly discuss the case with Petitioner or prepare for the hearing.

V. Petitioner was denied his constitutional right to a fair trial where new evidence demonstrates his actual innocence requiring a new trial.

VI. Petitioner was denied his constitutional right to a fair trial and to confront the witnesses against him by the admission of testimony from an African American woman who was not available to be cross-examined at trial.

VII. Petitioner was denied his right to a fair trial where perjured testimony was used to convict him.

VIII. Petitioner was denied his right to due process of law where the state prosecutor withheld exculpatory evidence of Henry's actual innocence.

IX. Petitioner's sentence is unconstitutionally based upon judge-found facts.

## II. Standard

Review of this case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"). Under the AEDPA, a state prisoner is entitled to a writ of habeas corpus only if he can show that the state court's adjudication of his claims –

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in

the State court proceedings.

28 U.S.C. § 2254(d).

"A state court's decision is 'contrary to' . . . clearly established law if it 'applies a rule that contradicts the governing law set forth in [Supreme Court cases]' or if it 'confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [this] precedent.'"  *Mitchell v. Esparza*, 540 U.S. 12, 15-16 (2003) (per curiam) (quoting *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000)).  "[T]he 'unreasonable application' prong of the statute permits a federal habeas court to 'grant the writ if the state court identifies the correct governing legal principle from [the Supreme] Court but unreasonably applies that principle to the facts' of petitioner's case." *Wiggins v. Smith*, 539 U.S. 510, 520 (2003), quoting *Williams*, 529 U.S. at 413.  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."  *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)).

Section 2254(d)(1) limits a federal habeas court's review to a

determination of whether the state court's decision comports with clearly established federal law as determined by the Supreme Court at the time the state court renders its decision. *See Greene v. Fisher*, 565 U.S. 34, 38 (2011). Section 2254(d) "does not require citation of [Supreme Court] cases – indeed, it does not even require *awareness* of [Supreme Court] cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." *Early v. Packer*, 537 U.S. 3, 8 (2002). "[W]hile the principles of "clearly established law" are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007).

Lastly, a federal habeas court must presume the correctness of state court factual determinations. See 28 U.S.C. § 2254(e)(1). A petitioner may rebut this presumption only with clear and convincing evidence. *Id.*

## III. Discussion

### A. Petitioner's Motion to Dismiss (ECF No. 40)

Petitioner has filed a motion to dismiss his habeas petition on the ground that he has newly-discovered evidence of actual innocence.

Under Federal Rule of Civil Procedure 41, a party may voluntarily

dismiss a suit "upon order of the court and upon such terms and conditions as the court deems proper" after an answer or motion for summary judgment has been filed.  Fed. R. Civ. P. 41(a)(2). "[A] voluntary dismissal without prejudice leaves the situation as if the action had never been filed." *Sherer v. Construcciones Aeronauticas*, S.A., 987 F.2d 1246, 1247 (6th Cir. 1993) (citation omitted).  A decision to grant or deny a voluntary dismissal is committed to the sound discretion of the district court.  *See Grover v. Eli Lilly & Co*., 33 F.3d 716, 718 (6th Cir. 1994).  "Generally, an abuse of discretion is found only where the defendant would suffer 'plain legal prejudice' as a result of a dismissal without prejudice, as opposed to facing the mere prospect of a second lawsuit."  *Id*. (citations omitted).  In *Grover*, the Sixth Circuit applied a four-factor test to determine whether a dismissal under Rule 41(a)(2) may prejudice the defendant: (1) the amount of time and effort the respondent has spent preparing for trial; (2) excessive delay and lack of diligence on the part of the petitioner in prosecuting the action; (3) the petitioner's failure to explain the need for a dismissal; and (4) whether the respondent has filed a motion for summary judgment.  *Id*. at 718.

The first factor weighs against a dismissal without prejudice.

Respondent has invested substantial time and effort in this case, including filing a 50-page answer, two supplemental answers, and a lengthy state-court record. And, although Respondent did not file a motion for summary judgment (the fourth factor), Respondent's three answers function as the equivalent. The second factor also weighs against dismissal. The new evidence Petitioner seeks to submit in state court is the affidavit of Keith Clarkston. (*See* ECF No. 40, PageID.1709.) The affidavit is dated November 12, 2019. (*Id.*) Petitioner waited two years before presenting this affidavit and fails to explain this delay. Finally, a review of the state court docket shows that the trial court has already denied Petitioner's motion for relief from judgment based on his claim of new evidence. *See People v. Henry*, No. 06-007508 (March 30, 2022 Dkt. Entry).

Considering these factors, the Court concludes that dismissal of the petition would result in prejudice to Respondent and denies Petitioner's motion to dismiss.

**B.    Actual Innocence (Claims I, V)**

In his first and fifth claims, Petitioner argues that he is actually innocent.    Claims of actual innocence based on newly discovered evidence "have never been held to state a ground for federal habeas relief

absent an independent constitutional violation occurring in the underlying state criminal proceeding."  *Herrera v. Collins*, 506 U.S. 390, 400 (1993). "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution – not to correct errors of fact."  *Id*.  In *House v. Bell*, the Supreme Court declined to answer the question left open in *Herrera* – whether a habeas petitioner may bring a freestanding claim of actual innocence.  *See House v. Bell*, 547 U.S. 518, 555 (2006) (noting that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional and warrant federal habeas relief if there were no state avenue open to process such a claim").

Citing *Herrera* and *House*, the Sixth Circuit has ruled that a free-standing claim of actual innocence based upon newly-discovered evidence is not cognizable on federal habeas review.  *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) ("[W]e have repeatedly indicated that such claims [of actual innocence] are not cognizable on habeas.")*,  Bowman v. Haas*, No. 15-1485, 2016 WL 612019, *5 (6th Cir. Feb. 10, 2016) (holding that a freestanding claim of actual innocence is not cognizable in a non-capital federal habeas proceeding).  Consequently, Petitioner's claims that

he is actually innocent and has newly-discovered evidence to prove his innocence fails to state a claim upon which relief may be granted.

## C.    Ineffective Assistance of Counsel (Claim II)

Petitioner's second claim concerns defense counsel's performance. He alleges that counsel was ineffective for failing to: (i) introduce evidence of his prior incarceration at a suppression hearing, (ii) investigate and present an expert witness on eyewitness identification; (iii) request a cautionary instruction on eyewitness identification; (iv) move for a directed verdict; (v) object to evidence that Petitioner was in custody; and (vi) object to prosecutorial vouching.

### 1.    *Strickland v. Washington*

A violation of the Sixth Amendment right to effective assistance of counsel is established where an attorney's performance was deficient and the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness."  *Id.* at 688.  To establish that an attorney's deficient performance prejudiced the defense, the petitioner must show "a reasonable probability that, but for counsel's unprofessional errors, the

result of the proceeding would have been different.  A reasonable

probability is a probability sufficient to undermine confidence in the

outcome." *Id.* at 694.

The standard for obtaining habeas corpus relief is "'difficult to meet.'"

*White v. Woodall*, 572 U.S. 415, 419 (2014) (*quoting Metrish v. Lancaster*,

569 U.S. 351, 358 (2013)).  In the context of an ineffective assistance of

counsel claim under *Strickland*, the standard is "all the more difficult"

because "[t]he standards created by *Strickland* and § 2254(d) are both

highly deferential and when the two apply in tandem, review is doubly so."

*Harrington*, 562 U.S. at 105 (internal citations and quotation marks

omitted).  "[T]he question is not whether counsel's actions were

reasonable"; but whether "there is any reasonable argument that counsel

satisfied *Strickland*'s deferential standard."  *Id.*

## 2.    Identification Testimony

Defense counsel filed a pretrial motion to suppress the identification

testimony of the victim, Toby Adams.  Adams testified at the preliminary

examination that he knew Petitioner "from the streets" for about "two or

three years" before the shooting.  (ECF No. 11-2, PageID.286.)   Petitioner

argues that defense counsel was ineffective for failing to present evidence

that he was incarcerated for the two or three years before the shooting and, therefore, Adams could not have seen him around the neighborhood. In support of this argument, Petitioner submits a Department of Corrections Verification of Incarceration. (ECF No. 1, PageID.66.) This documents shows that Petitioner was convicted of several crimes between 2002 and 2005. It does not, however, indicate that he was continuously incarcerated over that time period. As such, Petitioner fails to show that counsel performed deficiently by not presenting this argument or that he suffered resulting prejudice.

### 3. Expert Witness

Petitioner argues that counsel was ineffective for failing to present an expert to testify about the problems inherent to eyewitness testimony. "No precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 Fed. App'x 822, 833 (6th Cir. 2011). Counsel's decision not to call an expert witness on identification was reasonable because the "primary concern expressed in cases discussing the problems with eyewitness identification relates to a witness observing and subsequently

identifying a stranger." *Moss v. Hofbauer*, 286 F.3d 851, 862 (6th

Cir.2002).  In this case, Adams testified that he knew Petitioner from the

neighborhood, so the problems with eyewitness identification of a stranger

were not a concern.  Habeas relief is denied on this claim.

### 4.    Cautionary Instruction

Next, Petitioner argues that counsel was ineffective in fabling to

request a cautionary instruction on eyewitness identification. Although

counsel did not request a specific instruction on evaluating eyewitness

testimony, the trial court gave a general instruction on witness credibility,

which advised jurors to consider many factors in assessing witness

credibility including whether the witness could see clearly, how long the

witness was watching, potential distractions for the witness, whether the

witness appeared to have a good memory, and a witness's potential

motives for testifying.  This general instruction adequately guided the jury

in its consideration of the reliability of identification testimony.  Petitioner

has failed to show that counsel's failure to request a specific eyewitness

identification instruction resulted in prejudice.

### 5.    Directed Verdict

Next, Petitioner argues that counsel should have moved for a

directed verdict under the "physical facts rule" which states that "the testimony of a witness that is opposed to the laws of nature or which clearly conflicts with principles of science cannot be given any probative value by a jury." *March v. McAllister*, 573 Fed. App'x 450, 456 (6th Cir. 2014).  Adams testified that Petitioner fired the gun from the passenger side of the car, but an evidence technician testified that the bullet holes were on the driver's side of the vehicle.  This contradiction, Petitioner argues, means that Adams' testimony was contrary to the physical facts and should have been disregarded.  But Petitioner has not shown that Adams' testimony was so inconsistent with and contradicted by undisputed physical facts that it could not be given probative value.  It was for the jury to decide whether Adams was credible despite this apparent inconsistency. The jury clearly credited Adams' testimony and his testimony identifying Petitioner as the shooter was sufficient to establish Petitioner's guilt beyond a reasonable doubt.  As such, counsel was not ineffective for failing to make a meritless motion.

### 6.   Dejuanna Brookins' Testimony

Next, Petitioner argues that counsel was ineffective for failing to object when the prosecutor elicited testimony from Dejuanna Brookins that she visited Petitioner at the Wayne County Jail prior to trial.  The prosecutor asked Brookins if she had talked to Petitioner or visited him between the date of the shooting and the time of the trial.  Brookins replied that she visited him twice at the jail.

Defense counsel was not ineffective for failing to object to this brief reference to Petitioner's pre-trial incarceration.  Neither the prosecutor nor Brookins suggested that petitioner was incarcerated for some crime other than the crimes for which he was on trial, and the jury likely would have already suspected that Petitioner was incarcerated prior to trial given the seriousness of the charges.  The testimony was limited to the fact of pre-trial confinement.  In these circumstances, defense counsel performed reasonably in not objecting.  *See  Burton v. Renico*, 391 F.3d 764, 777-78 (6th Cir. 2004).

### 7.   Prosecutorial Vouching

Petitioner maintains that counsel should have objected to this portion of the prosecutor's closing argument:

-16-

> And I feel strongly that in this case, the logical conclusion that you should draw from all the evidence is that the two defendants seated before you are guilty of the crimes they're charged with.

(ECF No. 11-7, PageID.786.)

Prosecutorial vouching and an expression of personal opinion regarding the accused's guilt "pose two dangers: such comments can convey the impression that evidence not presented to the jury, but known to the prosecutor, supports the charges against the defendant and can thus jeopardize the defendant's right to be tried solely on the basis of the evidence presented to the jury; and the prosecutor's opinion carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." *United States v. Young*, 470 U.S. 1, 18-19 (1985). The prosecutor did not imply that he had some special information about Petitioner's guilt. The prosecutor's arguments focused on the evidence presented. The prosecutor argued that the evidence supported a finding of Petitioner's guilt, but did not suggest that the jury return a guilty verdict based upon the prosecutor's personal beliefs. Counsel was not ineffective for failing to raise a meritless objection.

### 8.   Cumulative Errors

Petitioner argues that the cumulative effect of counsel's multiple errors denied him his right to the effective assistance of counsel.  As discussed above, Petitioner has not shown that defense counsel performed deficiently, moreover, even assuming that counsel performed deficiently, in light of the totality of the evidence, Petitioner has not shown he was prejudiced by counsel's actions.

### D.   Constructive Denial of Counsel (Claim IV)

In his fourth claim, Petitioner maintains that counsel's inability to prepare for the preliminary examination amounted to the constructive denial of counsel and that prejudice should therefore be presumed under *United States v. Cronic*, 466 U.S. 648 (1984).  Respondent argues that this claim is unexhausted and procedurally defaulted.  "[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits."  *Hudson v. Jones*, 351 F. 3d 212, 215 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997)).  It may be more economical for the habeas court to simply review the merits of the petitioner's claims rather than to address "complicated issues of state law."  *Lambrix*, 520 U.S. at 525.  In this case, the Court finds it more efficient to

proceed directly to the merits.

A petitioner need not demonstrate *Strickland*'s prejudice prong where the circumstances arising in the case "are so likely to prejudice the accused that the cost of litigating their effect in a particular case is unjustified." *Cronic*, 466 U.S. at 658 (1984). Prejudice will be presumed where a defendant is denied the assistance of counsel at a critical stage in the proceedings. *Id.* at 659. *Cronic's* presumption of prejudice is applied only where "'the constructive denial of counsel and the associated collapse of the adversarial system is imminently clear.'" *Ivory v. Jackson*, 509 F.3d 284, 295 (6th Cir. 2007) *(quoting, Moss v. Hofbauer*, 286 F.3d 851, 860 (6th Cir. 2002)). Nothing in the record makes imminently clear a collapse of the adversarial system.

Defense counsel actively represented Petitioner at his preliminary examination. She extensively questioned the victim during the preliminary examination. Petitioner would thus be required to show that he was prejudiced by counsel's failure to more thoroughly cross-examine the victim at the preliminary examination. *See Burgess v. Booker*, 526 Fed. App'x 416, 432-33 (6th Cir. 2013). Because he has made no such showing, he is not entitled to relief on this claim.

### E. Ineffective Assistance of Appellate Counsel (Claim III)

Next, Petitioner maintains that he received ineffective assistance of appellate counsel because counsel failed to present meritorious claims on direct review. A petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). Strategic and tactical choices regarding which issues to pursue on appeal are "properly left to the sound professional judgment of counsel." *United States v. Perry*, 908 F.2d 56, 59 (6th Cir. 1990).

The claims raised in this petition are meritless. Appellate counsel need not raise non-meritorious claims on appeal. *Shaneberger v. Jones*, 615 F.3d 448, 452 (6th Cir. 2010) (citing *Greer v. Mitchell*, 264 F.3d 663, 676 (6th Cir. 2001)). Accordingly, the Court will deny habeas corpus relief on this claim.

### F. Procedural Default (Claims VI-VIII)

Respondent argues that Petitioner procedurally defaulted his sixth, seventh, and eighth claims. When a petitioner's claim is denied in state court "due to a state procedural rule that prevents the state courts from reaching the merits of the petitioner's claim, that claim is procedurally

defaulted." *Seymour v. Walker*, 224 F.3d 542, 550 (6th Cir. 2000). A

defaulted claim may not be considered on habeas review unless the

petitioner shows that "there was cause for the default and prejudice

resulting from the default, or that a miscarriage of justice will result from

enforcing the procedural default in the petitioner's case. *Id.*

Petitioner raised his sixth, seventh, and eighth claims in a successive

motion for relief from judgment in the trial court. The trial court denied the

second motion for relief from judgment based on a procedural bar.

Specifically, the court held that Petitioner failed to comply with Michigan

Court Rule 6.502(G), a rule that precludes the filing of a successive motion

for relief from judgment that is not based upon "a retroactive change in the

law that occurred after the first motion for relief from judgment or a claim of

new evidence that was not discovered before the first such motion." Mich.

Ct. Rule 6.502(G)(2). (*See* ECF No. 22-2, PageID.1456-57.) The

Michigan Supreme Court also denied relief leave to appeal under Rule

6.502(G). *People v. Henry*, 497 Mich. 853 (Mich. Sept. 5, 2014). The state

courts therefore clearly and expressly relied on Petitioner's failure to

comply with Rule 6.502(G) as a basis for denying review.

The Sixth Circuit Court of Appeals has held that Rule 6.502(G) "acts

as an adequate and independent state ground for denying review sufficient to procedurally default a claim." *Ingram v. Prelesnik*, 730 Fed. App'x 304, 311 (6th Cir. 2018). Thus, review of these claims is barred by this procedural default unless Petitioner establishes cause and prejudice to excuse the default or that failure to consider these claims will result in a miscarriage of justice.

To the extent that Petitioner is asserting ineffective assistance of appellate counsel as cause for his procedural default, this claim is meritless. Because there is no constitutional right to counsel on collateral review, ineffective assistance of appellate counsel does not excuse Petitioner's failure to fully present these claims in his first motion for relief from judgment. *Hannah v. Conley*, 49 F.3d 1193, 1196 (1995).

Thus, these claims are procedurally defaulted and barred from review unless Petitioner can establish that a constitutional error resulted in a fundamental miscarriage of justice. *See Schlup v. Delo*, 513 U.S. 298, 321 (1995). The narrow exception for fundamental miscarriages of justice is reserved for the extraordinary case in which the alleged constitutional error probably resulted in the conviction of one who is actually innocent of the underlying offense. *Dretke v. Haley*, 541 U.S. 386, 388 (2004). A prisoner

asserting actual innocence to excuse a procedural default "must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" *House v. Bell*, 547 U.S. 518, 536-37 (2006) (quoting *Schlup*, 513 U.S. at 327). This standard is "demanding and permits review only in the 'extraordinary' case." *Id.* at 538 (quoting *Schlup*, 513 U.S. at 327). A credible actual-innocence claim "requires [the] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial." *Schlup*, 513 U.S. at 324.

In support of his actual innocence claim, Petitioner submits three affidavits. A claim of innocence "based solely upon affidavits [is] disfavored because the affiants' statements are obtained without the benefit of cross-examination and an opportunity to make credibility determinations." *Herrera*, 506 U.S. at 417. The trial court, the last state court to issue a reasoned opinion on this claim, held that the affidavits did not warrant a new trial. *People v. Henry*, No. 06-007508-01 (Wayne County Cir. Ct. Nov. 2, 2009) (ECF No. 11-15, PageID.1203).

The first affidavit is that of Petitioner's co-defendant Adrian Gibson. Gibson was tried with Petitioner and acquitted of all charges.  In his affidavit, Gibson states that he witnessed a person known to him as "Ray, Ray" shoot Adams on June 2, 2006.  The trial court held that Gibson's affidavit was not newly-discovered evidence because Gibson was called to testify as a defense witness and noted that Gibson himself generally fit Gibson's description of "Ray, Ray."  (ECF No. 11-15, PageID.1204.)  The court also was "not persuaded by the affidavit, as the credibility of a codefendant, who was acquitted of the very same crime, and who had an opportunity to and in fact did testify in this matter, and who now comes forward with a description that he himself matches, is highly suspect."  (*Id.* at PageID.1204-05.)

Gibson's affidavit warrants the extreme suspicion typically afforded recanting affidavits and witnesses by the courts.  *Byrd v. Collins*, 209 F.3d 486, 508 n.16 (6th Cir. 2000).  *See also Welsh v. Lafler*, 444 Fed. App'x 844, 850 (6th Cir. 2011) (trial witness's sworn recantation must be viewed with caution); *Bower v. Curtis*, 118 Fed. App'x 901, 908 (6th Cir. Dec. 17, 2004) ("The recanting of trial testimony by prosecution witnesses is typically viewed with the 'utmost suspicion.'") (internal quotation omitted).

-24-

The affidavit contradicts Gibson's sworn trial testimony.  It was executed about two years after the shooting and after Gibson had been acquitted in connection with the shooting.  *See Ashton v. Davis*, 508 Fed. App'x 486, 488 (6th Cir. 2012) (three-year delay in executing affidavit undermined credibility of affiant). Gibson's affidavit is exactly the type of "eleventh-hour affidavit" which the Supreme Court states should be "treated with a fair degree of skepticism."  *Herrera*, 506 U.S. at 423 (O'Connor, J., concurring).

The affidavit of Jeffrey Moore is similarly unpersuasive.  (ECF No.1, PageID.60.)  Moore's affidavit states that he witnessed a man fitting the physical description of Adrian Gibson shoot Adams while another man, identified as "Fo-Fo", purchased drugs from Adams.  (ECF No. 1, PageID.60.)  Moore also stated that he did not testify at Petitioner's trial because defense counsel told him that his proposed testimony contradicted Adams' preliminary examination testimony.  The trial court held that the evidence was not newly-discovered because defense counsel was aware of Moore and his potential testimony.  (ECF No. 11-15, PageID.1205.)  The trial court reasonably concluded that Moore's affidavit was not credible. (*Id.*)  Moore's affidavit, like Gibson's, was executed years

after the shooting and Moore failed to provide an explanation for this delay. He also failed to explain why he did not provide this evidence to the police.

Finally, Petitioner submits the affidavit of Vivienne Jarman. She stated that, on June 2, 2006, she observed a brown-skinned man shoot directly into a white Crown Victoria and then flee into an apartment building. (ECF No. 1, PageID.62.) Jarman saw a picture of Petitioner on the State's Offender Tracking Information System (OTIS), and stated that she is "100% certain" that Petitioner was not the gunman she observed. (*Id.*) Jarman's affidavit was also executed years after the shooting. She stated she did not come forward sooner because she feared for her life. (*Id.*) The trial court found Jarman's affidavit not credible.

The affidavits all have significant credibility problems and fall far short of convincing the Court that, when considered in light of all the evidence presented at trial, the affidavits make it "more likely than not any reasonable juror would have reasonable doubt." *House*, 547 U.S. at 538. For these reasons, these claims are barred by procedural default.

### G. Sentencing Claim (Claim IX)

Finally, Petitioner argues that the trial court misscored offense variables 3 (physical injury to the victim) and 6 (intent to kill or injury).

Respondent argues that this claim is untimely because it dos not relate back to the date of the original petition.

Under Federal Rule of Civil Procedure 15, an amended pleading "relates back" to the original pleading only if the amended claims are tied to the "same core of operative facts" as alleged in the original petition. *Mayle v. Felix*, 545 U.S. 644, 664 (2005). "An amended habeas petition ... does not relate back (and thereby escape AEDPA's one-year time limit) when it asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *Id.* at 650.  An amended petition does not relate back to the original petition simply because the original and amended petitions arose from the same trial and conviction.  The Supreme Court reasoned that if "claims asserted after the one-year period could be revived simply because they relate to the same trial, conviction, or sentence as a timely filed claim, AEDPA's limitation period would have slim significance." *Id.* at 662.

In the instant case, Petitioner filed his amended petition on November 29, 2018, over six years after the filing of the original petition and well after the expiration of the one-year AEDPA statute of limitations period.  Therefore, if this claim is to be timely, it must relate back to the

original petition.  Petitioner did not raise this claim in his original petition.  It does not arise from the "same core of operative facts" as the claims raised in the original petition.  Thus, Rule 15(c)'s relation back principles do not apply and the claim is untimely.

## IV.  Certificate of Appealability

"[A] prisoner seeking postconviction relief under 28 U.S.C. § 2254 has no automatic right to appeal a district court's denial or dismissal of the petition.  Instead, [the] petitioner must first seek and obtain a [certificate of appealability.]"  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El*, 537 U.S. at 336 (2003) (internal quotes and citations omitted).

Reasonable jurists would not find the Court's assessment of Petitioner's claims to be debatable or wrong. The Court therefore declines to issue a certificate of appealability.

## V. Conclusion

For the foregoing reasons, **IT IS ORDERED** that the petition for a writ of habeas corpus and a certificate of appealability are **DENIED** and the matter is **DISMISSED WITH PREJUDICE.**

**IT IS FURTHER ORDERED** that Petitioner's Motion to Dismiss (ECF No. 40) is **DENIED**.

**IT IS FURTHER ORDERED** that Petitioner may proceed on appeal *in forma pauperis*.

Dated: July 13, 2022

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
July 13, 2022, by electronic and/or ordinary mail and also
on Deandre Henry #348806, Carson City Correctional Facility,
10274 Boyer Road, Carson City, MI 48811.

s/Brianna Sauve
Deputy Clerk

---